DOUCET, Judge.
This appeal presents a res nova theory of recovery of damages arising out of a clerk of court’s omission of a mortgage from a mortgage certificate requested by the plaintiff.
Floyd LeBleu filed suit against Forum Insurance Company, the liability insurer of the clerk of court of Lafayette Parish, for $60,000.00 damages allegedly incurred by LeBleu as a result of an omission, by the clerk, of a mortgage from a certificate of mortgages requested by LeBleu. LeBleu became a judgment creditor of Claude Blakely in January 1982. The amount of the indebtedness was approximately $85,-000.00. At the request of LeBleu, the clerk of court issued a mortgage certificate covering property owned by Blakely. This certificate reflected 17 judgments recorded against Blakely which were superior to the judgment recorded by LeBleu. The dates of these judgments begin in 1979 and continue through 1982. They range in amounts from a few hundred to several thousand dollars plus interest and attorney’s fees. The certificates fail to show a prior recorded mortgage in favor of Washington Life Insurance Company in the amount of $60,000.00.
LeBleu decided to seize Blakely’s property which consisted of a house and lot. After the seizure and before the sheriff’s sale, Blakely filed a petition for bankruptcy and a stay order was issued against the sheriff’s sale of the property.
LeBleu alleges that he decided to seize the property since the certificate did not show the existence of the Washington Life Insurance mortgage in the amount of $60,-000.00. LeBleu concluded that the sale of the house would probably bring enough money to satisfy the numerous superior judicial mortgages and would also pay a substantial sum on the indebtedness owed to him. As a result of the bankruptcy, LeBleu contends that he realized very little money from the bankruptcy sale.
LeBleu theorizes that, had he known of the existence of the Washington Life indebtedness, he would not have seized the property thereby causing the bankruptcy. He states that, had he known of the Washington Life mortgage, he would have withheld any seizure of Blakely’s property and, over a period of several years, Blakely would have been able to pay the many superior judgment creditors and reduce the .indebtedness to Washington Life. LeBleu argues that, by waiting for approximately five years, he could have then seized the property and recovered a substantial portion of his indebtedness. He states that the omission of the certificate caused the seizure and bankruptcy by Blakely thereby depriving him of the opportunity to wait for several years for a more favorable result of his debt collection.
After trial, wherein LeBleu represented himself, the trial court dismissed the claim on the ground that LeBleu failed to prove damages. On appeal, LeBleu’s brief is confined to the argument that he did prove damages. Forum Insurance argues that the issue on appeal is one of causation and not adequacy of proof of damages.
After a careful review of the record we agree that the first issue to be decided by us is causation. If we decide that the omission of the clerk, which is not disputed, was not a substantial cause-in-fact of any loss sustained by LeBleu, it will not be necessary that we determine the question of proof of damages.
CAUSE-IN-FÁCT
The liability of parish recorders or clerks of court for the issuance of an erroneous certificate emanates from LSA-C.C. art. 3394 which provides, in part, as follows:
“The register of mortgages and the parish recorders performing the same *974 duty, are answerable for injury resulting:
⅝ * * * * *
2. From omitting to mention in their certificates one or several acts existing on their registers, unless in this latter case the error proceeds from a want of exactness in the description, which can not be imputed to them.” (Emphasis added.)
As we have previously stated, it is undisputed that the clerk omitted from the certificates the mortgage to Washington Life in the principal amount of $60,000.00. The question for our determination is whether LeBleu incurred any loss as a result of such omission. To make such a determination we must decide whether such an omission was the legal cause or cause-in-fact of any loss. LeBleu, to be successful, must prove, by a preponderance of the evidence three essential elements: (1) omission in the certificate (undisputed herein), (2) such omission resulted in or was a cause-in-fact of a loss, and (3) the amount of the loss sustained, if any.
In this case LeBleu, in order to establish cause-in-fact, must show that he probably would not have suffered any losses had it not been for the clerk’s omission or that the omission was a substantial factor in bringing about the loss.
The only testimony presented in this case was that of LeBleu. His testimony was essentially narrative in form since he represented himself.[1]
LeBleu stated, had he known of the $60,-000.00 mortgage held by Washington Life, he would not have seized Blakely’s property causing Blakely to file for bankruptcy thereby discharging his indebtedness. Le-Bleu testified that, if he had known of the Washington Life mortgage, he would have waited several years until Blakely had paid the many superior judgment creditors and had paid the Washington Life debt down to where Blakely would have more equity in his house. At that time, however long it would take, LeBleu stated he could then seize the house and realize a substantial payment from the seizure. He felt that, during the years that he was waiting for Blakely to make these payments, the Blakely property would appreciate by $25,-000.00 to $50,000.00.
LeBleu’s theory of eventual debt satisfaction must be labeled theory and nothing more. To support this vague plan we must make many assumptions which have no basis in fact. For instance, LeBleu would have us to assume, without any proof, that for several years (1) Blakely would continue to maintain his health and whatever employment he had and make payments to Washington Life and the approximately 17 other judgment creditors during that period of time; (2) none of the many superior judgment creditors would seize the house to satisfy their indebtedness; (3) none of these superior creditors or any future creditor would have forced Blakely into bankruptcy; and (4) Blakely, faced with such indebtedness, would not decide on his own to declare bankruptcy.
The record contains no evidence, other than LeBleu’s assertion, as to what the plans of the future creditors were. Any one of these judgment creditors could have easily become concerned about Blakely’s financial problems and effectuate a seizure at any time which could have forced Blakely into bankruptcy. It is difficult to see how Blakely could forego bankruptcy and keep paying judgment creditors and mortgage notes, knowing that at some future time his long-standing endeavors would culminate in a seizure and sale of his house to LeBleu. These circumstances reflect a strong probability that Blakely would take bankruptcy of his own accord. There is no evidence to show what kind of work Blakely does, who was his employer nor whether *975 any employment he may have would continue at a steady rate or whether he would be terminated for health or other reasons.
In conclusion, we find that LeBleu’s theory of recovery must fall. It is based upon, not fact, but upon conclusions, assertions, conjecture and speculation. It cannot be said that LeBleu has proven by a preponderance of the evidence that he sustained a loss which resulted from omission by the clerk in the mortgage certificate. Therefore, it cannot be said that the omission was a legal cause or cause-in-fact of Le-Bleu’s inability to collect his indebtedness from Blakely who was facing very difficult, if not insurmountable, financial situations. Having reached this conclusion, a discussion of quantum is unnecessary.
For these reasons, the judgment of the trial court is affirmed. The costs of this appeal shall be paid by appellant, Floyd LeBleu.
AFFIRMED.
GUIDRY, J., concurs and assigns written reasons.

. This narrative form of testimony presented difficulty for the court to properly rule on objections to hearsay, conclusions, opinions and other testimony which would be omitted if presented in question and answer form. As a result, the record contains conclusions, opinions and hearsay. We, however, recognize the trial court’s problem in this record, and will consider it in our evaluation of the testimony.